673 A.2d 952

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Richard BIENSTOCK.**

Superior Court of Pennsylvania.

Argued Nov. 29, 1995.

Filed March 22, 1996.

300

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Mark Lancaster, Pittsburgh, for appellee.

Before DEL SOLE, BECK and JOHNSON, JJ.

BECK, Judge.

The issues before us on appeal are: 1) whether an agent of the Pennsylvania State Police Bureau of Liquor Control Enforcement had authority to stop a motorist when he observed the motorist driving his car erratically, and 2) if the stop was made without authority, whether the court erred in suppressing the evidence. We conclude the agent of the Bureau of Liquor Control Enforcement did not have authority to stop the motorist and suppression of the evidence was proper. The Commonwealth appeals.[1]

In reviewing an appeal taken by the Commonwealth from an order suppressing evidence, we must consider the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. We are bound by

---

1. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985) allows the Commonwealth to appeal a pre-trial suppression order, so long as, the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution. The certification requirement of *Dugger* has been satisfied and the Commonwealth has a right to appeal the validity of the pre-trial suppression order.

the suppression court's findings of fact if those findings are supported by the record and may only reverse if the legal conclusions drawn from those facts are in error. *See Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030 (1992); *Commonwealth v. Bennett*, 412 Pa.Super. 603, 604 A.2d 276 (1992).

Richard Bienstock, defendant and appellee, was arrested and charged with one count of driving under the influence of alcohol or controlled substance [2] and one count of careless driving.[3] The facts as determined by the trial court and supported by the record are as follows:

> On May 27, 1993, at approximately 3:00 P.M., Defendant was driving a vehicle on SR 286 in Plum Boro, Allegheny County, near Old Frankstown Road. Officer Bradley Trusal, of the Bureau of Liquor Control Enforcement, observed Defendant swerve from the berm and cross the center line while traveling extremely slow [sic], about 3–5 miles per hour. Defendant then stopped at the intersection while the light was green. Officer Trusal said Defendant appeared to be reading directions. Additionally, the front of his vehicle was smashed. Officer Trusal activated his siren, approached Defendant and directed him to pull his car into a nearby parking lot.

> Officer Trusal questioned Defendant about the vehicle's damage. He found Defendant incoherent with numerous conflicting stories to explain the damage. Officer Trusal radioed Pennsylvania State Trooper Marvin Wallace for assistance. Officer Trusal's statement became part of the official police report. When Trooper Wallace arrived, he took the information from Officer Trusal and administered field sobriety tests. Defendant was arrested after he failed these tests. He was taken to St. Margaret Hospital, where he gave samples of blood and urine.

> Officer Trusal did not appear at the suppression hearing. Defense counsel stipulated to the facts contained in the

2. 75 Pa.C.S. § 3731(a)(2) (Purdons Supp.1995)

3. 75 Pa.C.S. § 3714 (Purdons Supp.1995).

police report. The report does not state whether Officer Trusal identified himself as an officer or showed his badge.

Bienstock filed a pre-trial motion to suppress all evidence seized as a result of his arrest. The trial court granted his motion and held (1) Officer Trusal, as an agent of the Pennsylvania State Police Bureau of Liquor Control Enforcement, did not have authority to stop and seize a vehicle for a traffic violation; (2) Officer Trusal acted as a state official and not as a private citizen; and (3) the stop was illegal. As a result, the evidence gained therefrom was suppressed.

Recognizing that Trusal may not have had statutory authority to make the stop,[4] the Commonwealth argues that Trusal acted as a private citizen and not as a state official. We disagree. *Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288 (1991), *aff'd*, 543 Pa. 403, 672 A.2d 280 (1996), is instructive in determining whether Trusal acted as a private citizen or a state official. In *Price*, an FBI agent travelling in an unmarked FBI vehicle observed defendant driving erratically. Fearing that the defendant driver was in distress or a danger to others, the FBI agent activated his lights and siren to stop the defendant's car. Once stopped, the agent decided the matter was beyond his jurisdiction and radioed the local police. The court found the agent was acting under color of state law and that defendant's arrest by the FBI agent was illegal. The agent had no authority to stop the defendant for summary offenses. *Price*, 406 Pa.Super. at 168–70, 593 A.2d at 1289. Therefore, the subsequent arrest by the local police was illegal having been tainted by the FBI agent's illegal stop. 406 Pa.Super. at 170–72, 593 A.2d at 1290. The court underscored that the agent was not acting as a private citizen. He used his badge and siren to effectuate the arrest. 406 Pa.Super. at 172–74, 593 A.2d at 1291. *See Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994) (the sheriff, whether or not authorized to stop, was acting under color of law so that state action was implicated, and suppression of evidence was appropriate if the stop was illegal even though a subsequent legal

4.   47 Pa.S. § 2–211.

arrest was made). In the instant case, Trusal was on duty, in an official unmarked car and he activated his siren to stop Bienstock. Applying precedent to the instant facts, it is clear there was sufficient indicia of official conduct for the trial court to find that Trusal's action constituted state action.[5]

The authority of Trusal, as an Officer of the Pennsylvania State Police Bureau of Liquor Control Enforcement, is established by statute.[6] Liquor Control Enforcement Officers do not have authority to stop individuals for traffic violations.[7] Since Trusal was acting under color of state law, without the authority to stop appellee for a traffic violation, the initial stop by Trusal was illegal making the subsequent arrest by Officer Wallace fatally flawed. *Price, supra.*

The Commonwealth argues that even if the stop and arrest were illegal, the court erred in suppressing the evidence. They assert that suppression is " 'a remedy out of all proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimposed.' " *Commonwealth v. Saul,* 346 Pa.Super. 155, 499 A.2d 358 (1985) (*citing United States v. Searp,* 586 F.2d 1117 (6th Cir.1978)). The Commonwealth posited that suppression is the proper remedy only where the officer's action constitutes a fundamental, constitutional violation. In the instant case, the Commonwealth does not make its argument based on the Pennsylvania Constitution. It only argues that Bienstock's constitutional guarantees against unreasonable search and seizure have not been violated. *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985). We disagree.

5. Private citizens do not have authority to make stops or arrests for summary offenses. *Commonwealth v. Mancini,* 340 Pa.Super. 592, 490 A.2d 1377 (1985). Therefore, even if the court had found that Trusal acted in his private capacity, the stop would have been illegal.

6. The powers and duties of a member of the Bureau of Liquor Control Enforcement are set forth in the Pennsylvania Liquor Code, 47 P.S. § 2–211.

7. 47 Pa.S. § 2–211 does not give the liquor control enforcement officer authority to stop for motor vehicle violations. *See* 1983 Op.Att.Gen. No. 6 (liquor control officer does not possess general powers of arrest).

■ The right to be free from unreasonable searches and seizures under the Fourth Amendment protects the defendant from unreasonable search and seizure. Trusal's stop of appellant's car was an illegal intrusion of his constitutional guarantees.

This court has sanctioned suppression under fact patterns similar to the instant one. In *Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986), a park police officer acted beyond his jurisdictional authority. In *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991), a campus police officer acted beyond his jurisdictional authority. In *Commonwealth v. Price, supra*, an FBI agent acted beyond his jurisdictional authority. In all of these cases, the court found suppression to be the proper remedy. In *Price* the Commonwealth specifically argued that application of the exclusionary rule was a disproportionately severe remedy and not appropriate because the defendant's constitutional rights were not violated. 406 Pa.Super. at 172–74, 593 A.2d at 1291. A panel of this court, finding the initial arrest by an FBI agent illegal, held the subsequent arrest by an authorized official was tainted by the first arrest, and therefore, suppression of evidence was the proper remedy. 406 Pa.Super. at 174–75, 593 A.2d at 1292.

■ Suppression of evidence in the instant case was proper.[8] As discussed above, Trusal's stop of Bienstock was

8. The Commonwealth supports its position that suppression was an improper remedy by citing to authority that is neither applicable nor controlling. *Commonwealth v. Corley*, 507 Pa. 540, 491 A.2d 829 (1985), holding the exclusionary rule does not apply to illegal citizen's arrests, is not applicable since we previously determined Trusal acted under color of state law. *Commonwealth v. Mason, supra*, held the exclusionary rule was not a proper remedy because while there was a technical violation of a criminal rule of procedure, the underlying constitutional requirements were satisfied. In *Commonwealth v. Saul*, 346 Pa.Super. 155, 499 A.2d 358 (1985), *Commonwealth v. Peppers*, 357 Pa.Super. 270, 515 A.2d 971 (1986), and *Commonwealth v. Sestina*, 376 Pa.Super. 441, 546 A.2d 109 (1988), the court refused to suppress the evidence when officers violated the Municipal Police Jurisdiction Act by investigating and arresting outside of their jurisdiction. However, in these cases, the municipal officers who acted outside of their jurisdiction had the authority to act within their own jurisdiction, and all other

outside his authority as an agent of the Bureau of Liquor Control Enforcement. As a result, Trusal, like the officer in *Roberts, Savage* and *Price*, acted beyond his authority and intruded upon appellee's right to be free from unreasonable search and seizure. We agree with this court's analysis in *Savage*. Had Trusal complied with his statutory authority, Bienstock would never have been stopped. Furthermore, the subsequent arrest by Trooper Wallace would not have occurred. Trusal's unauthorized, illegal stop and arrest of Bienstock, violated appellant's Fourth Amendment protections and suppression was the appropriate remedy.

Order Affirmed.

constitutional requirements were satisfied. In *Commonwealth v. Goodman*, 347 Pa.Super. 403, 500 A.2d 1117 (1985), suppression was not proper because, while the warrant was requested by the wrong officer of the Commonwealth, the warrant was constitutionally valid. *Commonwealth v. Galloway*, 525 Pa. 12, 574 A.2d 1045 (1990), is not precedential. Its holding did not command a majority of the Pennsylvania Supreme Court.